## BEATRICE BOYNTON v. MODERN WOODMEN OF AMERICA.[1]

### January 28, 1921.

### No. 22,017.

**Death—presumption from absence for seven years.**

1. In an action involving the rule that the unexplained disappearance of a person without tidings for the period of seven years or more raises an inference or presumption of death, the evidence is *held* to support the presumption and to justify the verdict of the jury.

**Same—change of by-law subsequent to date of contract.**

2. An amendment of the by-laws of a mutual beneficiary association subsequent to the date of a particular insurance contract, by which the presumption of death arising from such unexplained disappearance was abrogated, and in place thereof a provision made to the effect that no inference of death by disappearance should arise until the expiration of the insured's life expectancy, is unreasonable and therefore void.

**Excessive use of intoxicants — verdict sustained.**

3. The verdict of the jury to the effect that there was no violation of the contract by the insured in the intemperate use of intoxicating liquor is sustained by the evidence. The rule stated in O'Connor v. Modern Woodmen of America, 132 Minn. 303, followed and applied.

**No error.**

4. The record presents no reversible error.

Action in the district court for Ramsey county to recover $3,000 upon defendant's beneficiary certificate. The case was tried before Brill, J., who at the close of the testimony denied defendant's motion for a

[1]Reported in 181 N. W. 327.

directed verdict, and a jury which returned a verdict for $3,102.51. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Truman Plantz, Elijah Barton* and *George G. Perrin,* for appellant.
*Kerr & Richardson,* for respondent.

BROWN, C. J.

Action to recover upon a beneficiary certificate issued by defendant to G. L. Boynton, with plaintiff as beneficiary. Plaintiff had a verdict and defendant appealed from an order denying its alternative motion for judgment or a new trial. The appeal presents several questions which will be considered in their order.

The certificate of insurance was issued to Boynton on May 8, 1898, and was payable on his death to his widow, plaintiff in the action. The complaint alleges that Boynton died prior to the commencement of the action, due proof whereof was given to defendant, and that defendant refused payment. The alleged death of Boynton was put in issue by the answer. There was no direct proof on the trial of his death; plaintiff relied to establish that fact upon the rule of the common law that an inference thereof arises in such cases from a showing of an unexplained absence or disappearance without tidings for a period of seven years or longer. It was shown that Boynton disappeared on August 21, 1910, and it was plaintiff's claim that, although search and inquiry had been made to ascertain his whereabouts, nothing was heard of him after that date. Evidence tending to support that claim was presented and thereon the verdict of the jury was predicated.

It is contended by defendant in support of the appeal: (1) That the evidence does not bring the case within the rule relied upon, in that no sufficient search and inquiry were made to learn whether Boynton was dead or alive, and further, that he was in fact heard from through a letter written by him to a relative within the seven-year period of claimed disappearance, or on a date some four years prior to the commencement of the action; (2) that the rule of the common law referred to is rendered inapplicable to the case by force of a by-law of defendant association, which defendant claims forms part of the insur-

ance contract, whereby it is provided that no presumption of death shall arise from the disappearance or unexplained absence of an insured member until after the expiration of his life expectancy, a time which as to Boynton had not expired when the action was commenced; and (3) that the contract of insurance in suit was forfeited and annulled by reason of a violation of the conditions thereof by Boynton in the excessive use of intoxicating liquors.

The same contentions were made in the court below, the first and third of which were submitted to the jury, and upon the second the court ruled that the by-law relied upon by defendant as abrogating the rule of the common law in such cases, having been enacted some ten years subsequent to the date on which Boynton became a member of the association, was, as to his membership, unreasonable and void.

1. A careful examination of the record and the points made by defendant leads to the conclusion that the learned trial court correctly disposed of the case. The evidence made the question of Boynton's disappearance, and whether sufficient search and inquiry had been made to learn his fate, one of fact for the jury, and the verdict is fully supported. The case is brought within the rule of the common law, relied upon by plaintiff, which has frequently been applied in this state. Spahr v. Mutual Life Ins. Co. 98 Minn. 471, 108 N. W. 4; Beahlmer v. Grand Lodge A. O. U. W. 109 Minn. 305, 123 N. W. 1071, 26 L.R.A. (N.S.) 305; Pierson v. Modern Woodmen of America, 125 Minn. 150, 145 N. W. 806; Swanson v. Modern Brotherhood of America, 135 Minn. 304, 160 N. W. 779; 1 Dunnell, Minn. Dig. § 3434. A discussion of the evidence will serve no useful purpose. It presents a case similar to those cited, and others collected in 8 R. C. L. p. 708.

The only item of evidence found in the record, tending in any substantial way in rebuttal of the inference of death, is presented by that given by a sister of Boynton, who testified that she received a letter from him about four years before the trial of the action, in which he made some suggestions about the entry of her sons into the war with Germany. But, after full consideration of the matter, we conclude that the verity of the evidence was for the jury and trial court, with whose conclusion thereon we find no sufficient reason for interference. And,

although the record contains no direct evidence in challenge of the credibility of the witness, all evidentiary facts presented tend to discredit the receipt of the alleged letter by her, or that it was authentic or written by Boynton, if in fact received by her.

Boynton disappeared suddenly, dropped out of sight, in August, 1910, and without apparent cause. Prior to that time he had carried on a somewhat regular correspondence with another sister, who for a time resided with the father in Minneapolis. He had also made frequent contributions of money to this sister and to the father for aid in their support. Subsequent to the disappearance no word came from him to either, and no contributions were thereafter made to them. But it is undisputed that no other member of the Boynton family, save the sister who received the letter referred to, heard from or of him in any form after the date stated. He had not regularly corresponded with the particular sister, and, though having knowledge and good reason for the belief that other members of the family had not heard from him in many years, and were solicitous as to his welfare, the jury were fully justified in finding that she made no reference to the letter to any of them; she testified that she thought she had mentioned it to one of her sisters some two years after it was received; she was clear on the question. Plaintiff, the wife, had no tidings of any kind after the date of disappearance, though she made due search and inquiry. In this state of evidence we conclude that the verity of this letter was one of fact for the jury, and that their conclusion thereon is not opposed to the weight of the evidence taken as a whole.

2. Boynton became a member of the defendant association in 1898. By his application for membership all by-laws of the association were made a part of the contract, together with the right on the part of the association subsequently to amend and modify the same. By an amendment of the by-laws in 1908 there was added thereto a clause to the effect that the disappearance of a member should create an inference of death only when continued the full period of his life expectancy. The contention of defendant is that this by-law displaces and renders inapplicable the rule of the common law, and therefore that the action on

the contract cannot be mantained until the lapse of the period of Boynton's expectancy of life.

We concur in the ruling of the learned trial court that the new by-law substantially changed the contract between the parties and is unreasonable and void. That view is supported by the general trend of our decisions in similar cases. Flakne v. Minn. F. Mut. Ins. Co. 105 Minn. 479, 117 N. W. 785; Thibert v. Supreme Lodge K. of H. 78 Minn. 448, 81 N. W. 220, 47 L.R.A. 136, 79 Am. St. 412; Tebo v. Supreme Council of Royal Arcanum, 89 Minn. 3, 93 N. W. 513; Olson v. Court of Honor, 100 Minn. 117, 110 N. W. 374, 8 L.R.A.(N.S.) 521, 117 Am. St. 676, 10 Ann. Cas. 622; Fidelity & Casualty Co. v. Eickhoff, 63 Minn. 170, 65 N. W. 351, 30 L.R.A. 586, 56 Am. St. 464. And supported also by the prevailing judicial opinion in other jurisdictions. Haines v. Modern Woodmen of America, 189 Iowa, ——, 178 N. W. 1010, involved the same by-law and upon facts similar to those here presented it was held unreasonable and void. There as here the by-law was enacted by the association long subsequent to the time when the insured became a member of the association and received his benefit certificate, but a year or so before his disappearance. The same situation was also presented in Sweet v. Modern Woodmen, 169 Wis. 462, 172 N. W. 143; Garrison v. Modern Woodmen of America, 105 Neb. ——, 178 N. W. 842; Gaffney v. Royal Neighbors, 31 Idaho, 549, 174 Pac. 1014; Samberg v. Knights of Modern Maccabees, 158 Mich. 568, 123 N. W. 25, 133 Am. St. 396; and in Hannon v. Grand Lodge, 99 Kan. 734, 163 Pac. 169, L.R.A. 1917C, 1029. See, also, 19 R. C. L. 1204, and collection of citations in note to Samberg v. Knights of Modern Maccabees, supra, in 133 Am. St. 396.

At the time the insurance contract in the case at bar was entered into, it was settled law that an unexplained absence of seven years was competent evidence of death, and sufficient to justify a recovery thereon by the beneficiary. The amended by-law not only abrogates that rule of evidence, and that method of proof of death, in which the insured perhaps can have no vested right, but materially changes the contract in point of substance by imposing upon the beneficiary the burden of continuing the payment of dues and assessments for a long period of time

after the lapse of the seven years' disappearance, namely, during the period of the insured's life expectancy. That the change is unreasonable seems the only fair conclusion. The opposite conclusion has been adopted in Illinois, the home of the defendant corporation, Ohio and Missouri. Steen v. Modern Woodmen, 296 Ill. 104, 129 N. E. 546; Cobble v. Royal Neighbors (Mo. App.) 219 S. W. 118; McGovern v. Brotherhood, 85 Oh. St. 460, 98 N. E. 1128. We are not persuaded by the reasoning of the opinions in those cases. The result there arrived at borders too closely upon the technical or strict legal rights, wholly divorced from considerations of reasonableness, which are guiding elements in cases of the kind, and conflicts with the law of this state. Coverdale v. Royal Arcanum, 193 Ill. 91, 61 N. E. 915. It is not claimed that on the issues here presented the case of Supreme Council Royal Arcanum v. Green, 237 U. S. 531, 35 Sup. Ct. 724, 59 L. ed. 1089, L.R.A. 1916A, 771, is in point. The other citations presented by defendant's counsel are clearly differentiated in their facts, and therefore not in point.

3. The rule is settled in this state that, to constitute a violation of the provisions of an insurance contract restricting the use of intoxicating liquors, the habit of the insured in that respect must have been of such a nature and so intemperately followed, as to impair his health, mental faculties or otherwise render the insurance risk more hazardous. O'Connor v. Modern Woodmen of America, 110 Minn. 18, 124 N. W. 454, 25 L.R.A.(N.S.) 1244; Wising v. Brotherhood of American Yeomen, 132 Minn. 303, 156 N. W. 247, Ann. Cas. 1918A, 621. A consideration of the evidence bearing on this feature of the case leads to the conclusion that the question was properly submitted to the jury and that the verdict with the trial court's approval is not so clearly against the evidence as to require a new trial.

This covers the case and all that need be said in disposing of the appeal. All the assignments of error have been fully considered, with the result that no reversible error appears in the rulings on the admission or exclusion of evidence or in the instructions to the jury. The charge of the learned trial court taken as a whole was a clear and concise presentation of the law of the case, and free from error.

Order affirmed.